FRENCH AMERICAN REEDS MANUFACTURING CO., INC., PLAINTIFF, v. PARK PLASTICS CO., INC., AND CHRIS-KRATT INSTRUMENT CO., INC., DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided June 27, 1951.

*Mr. Walter J. Bilder* for the plaintiff (*Messrs. Bilder, Bilder & Kaufman,* attorneys).

*Mr. Edward Gaulkin* for the defendants (*Messrs. Reed, Reynolds & Smith,* attorneys).

FREUND, J. S. C.  The plaintiff seeks an injunction to permanently restrain the defendants from manufacturing and selling a plastic ukelele, known as the "Flamingo," on the ground that it so closely resembles in shape, design, color, price and packaging the plaintiff's plastic ukelele, known as the "Islander," as to constitute unfair competition.  The plaintiff initially applied for a preliminary injunction which was denied, as the plaintiff did not sufficiently establish such urgency or irreparable damage as would warrant an injunction *pendente lite.*

From the evidence, the facts are as follows: In January, 1950, the plaintiff began the manufacture and distribution of its "Islander" plastic ukelele at a retail price of $5.95. Mario Maccaferri, the president of the plaintiff corporation, admitted that when he was designing the "Islander" he had before him about a dozen wooden ukeleles and incorporated the best features of each in his product.  Until April, 1950, the "Islander" plastic ukelele was the only plastic ukelele on

the market. In June, 1950, the defendant, Chris-Kratt Instrument Co., Inc., introduced a plastic ukelele called the "Flamingo." The defendants admit that the plaintiff's "Islander" was the first plastic ukelele on the market. But Chris Kratt, president of the defendant, Chris-Kratt Instrument Co., Inc., testified that in July, 1949, he had examined a toy plastic ukelele and conceived the idea of manufacturing a standard size plastic ukelele. In October, 1949, he conferred with Arthur Lange, the president of the defendant, Park Plastics Co., Inc., about manufacturing a plastic ukelele and they proceeded with drawings and plans to put the idea into effect. It is conceded that before their product was in process of manufacture, the plaintiff's "Islander" ukelele appeared on the market and they purchased one.

It is clear from the evidence that in addition to the "Islander" and the "Flamingo" there were, on the filing of the complaint, at least three other plastic ukeleles on the market; the "Mauna Loa," the "Hawaiian" and the "Fin-Der," samples of which were exhibited to the court and all of which appeared to resemble both the "Islander" and the "Flamingo." There was also testimony that the "Fin-Der" was sold to the public as early as April, 1950. The defendants contend that they did not intentionally copy the design of the "Islander," that any similarity is due to standardization of the instrument. The plaintiff charges that there is no standard ukelele size, shape or design. However, all five plastic ukeleles exhibited seemed to the court substantially alike in those features.

The underlying principle that no man has a right to palm off his wares as those of another, thereby cheating the public and filching the business of a rival, is so solidly imbedded in our jurisprudence that to secure redress it is necessary only to show that the offense has been committed. *National Biscuit Co. v. Pacific Coast Biscuit Co.*, 83 *N. J. Eq.* 369 (*Ch.* 1914). No one has the right to sail under false colors and represent his goods as those of someone else. That is not fair competition; it is closer to piracy. *Miller Tobacco*

*Manufactory v. Commerce,* 45 *N. J. L.* 18, (*Sup. Ct.* 1883); *Perlberg v. Smith,* 70 *N. J. Eq.* 638 (*Ch.* 1905); *Polackoff v. Sunkin,* 115 *N. J. Eq.* 134 (*E. & A.* 1934).

█ █ The markets are free and open to manufacture and sell any lawful commodity which one has sufficient skill, ingenuity and energy to fabricate and vend, unless protected by patent. Everyone should be required to depend for his success upon his own ability and character and the quality of his own production, and must not defraud the public through misrepresentation. *Weiss v. The Stork & Gift Shop,* 137 *N. J. Eq.* 475 (*Ch.* 1946); *Goldscheider v. Schnitzer,* 3 *N. J. Super.* 425 (*Ch.* 1949). However, the mere copying of an article unprotected by patent or trademark does not in and of itself spell misrepresentation nor entitle the original designer to protection unless that copying is accompanied by conduct or circumstances constituting unfair competition. Freedom of manufacture and legitimate competition cannot be cut down under the name of preventing unfair competition. *Flagg Mfg. Co. v. Holway,* 178 *Mass.* 83, 59 *N. E.* 667 (*Sup. Jud. Ct.* 1901); *Nims, Unfair Competition and Trademarks* (4th ed.), c. 10, page 370 et seq. But if the public is likely to be confused into mistaking the copy for the original, there is unfair competition. It is not necessary that the confusion be actual, but only natural and probable as the result of the resemblance. *American Fork & Hoe Co. v. Stampit Corp.,* 125 *F.* 2d 473 (*C. C. A. 6th,* 1942).

█ In the instant case, there is not the slightest evidence that purchasers of the defendants' "Flamingo" plastic ukelele believed they were buying the plaintiff's "Islander" ukelele. Jobbers and retailers so testified for the defendants. Indeed, it seems reasonable that the selection of such an article as a plastic ukelele would be made because it pleased the eye, ear and pocketbook of the buyer, and not because of its source. So long as the defendants do not represent themselves as the plaintiff nor their product as the plaintiff's, they have the same right as the plaintiff to manufacture plastic ukeleles, even to imitate the plaintiff's product. Necessarily there is

a great deal of similarity between plastic ukeleles; otherwise, they would not be what they are, but something else. They are made in the form they are in order to accomplish their function, and variations in form and appearance cannot be great if a marketable item is to be manufactured. *Miss. Wire Glass Co. v. Continuous Glass Press Co.*, 79 *N. J. Eq.* 277 (*Ch.* 1911); *Crescent Tool Co. v. Kilborn & Bishop Co.*, 247 *Fed.* 299 (*C. C. A. 2d*, 1917).

Here, there is no proof of what might be called "unnecessary imitation"—imitation designed to mislead, nor was the plaintiff's "Islander" plastic ukelele, although a pioneer in its field, the only plastic ukelele in the market a sufficient length of time and with such a degree of success as to acquire secondary meaning. That comes gradually and over a period of time; it cannot be manufactured overnight even by intensive advertising. In order that the manufacture and sale of a copy be enjoined, the public must be moved to buy the article because of its source. It is not enough to show that plastic ukeleles became popular under the name "Islander"; the plaintiff must prove that the public thought all plastic ukeleles were "Islanders" and bought them in the belief they were buying "Islanders." *Crescent Tool Co. v. Kilborn & Bishop Co., supra.* The "Islander" ukelele was on the market no more than three months before the "Fin-Der" appeared, so that it was only for a comparatively short period of time that the plaintiff had a monopoly of the field. In passing, it may be queried why the plaintiff chose as defendants the manufacturers of the "Flamingo" plastic ukelele in view of the fact that at least three other plastic ukeleles were on the market at the institution of this suit.

The proofs do not show that the defendants attempted to palm off on the purchasing public their product as the plaintiff's; there is no evidence of confusion or deception or misrepresentation either actual or likely. *Mavco, Inc., v. Hampden Sales Assn.*, 77 *N. Y. S. 2d* 510 (*App. Div.* 1948).

Judgment for the defendants.