108 N.J. Super. 75 (1969)
260 A.2d 6
PRESS PUBLISHING COMPANY, A DIVISION OF ABARTA CORP., A PENNSYLVANIA CORPORATION, t/a ATLANTIC CITY PRESS, PLAINTIFF,
v.
ATLANTIC COUNTY ADVERTISER, INC., A NEW JERSEY CORPORATION, t/a ATLANTIC COUNTY ADVERTISER; MAX RAUCHWARG; HELEN RAUCHWARG; AND DAVE FALCIANO, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided December 9, 1969.
*76 Mr. Chaim H. Sandler attorney for plaintiff.
Mr. David Jerchower for defendants.
HORN, J.S.C.
Plaintiff is a corporation which publishes and distributes the Atlantic City Press, a daily newspaper which circulates in Atlantic County and neighboring counties. Defendant corporation publishes and distributes the Atlantic County Advertiser, a weekly paper, in portions of Atlantic County.
This action was brought primarily to enjoin defendants, corporate publisher and its staff, from copying or reproducing in its papers advertisements which plaintiff prepares for its advertising customers and which have first appeared in plaintiff's newspaper.
The thesis upon which plaintiff seeks relief is that the conduct of defendants constitutes "unfair competition" by reason of defendants' "pirating" the advertising copy and art work prepared by and printed in the Atlantic City Press.
*77 By stipulation it was agreed that the case should be first tried on the issue of liability with respect to six contracts for advertisements, presumably typical of those claimed by plaintiff as having been reproduced; that following the initial hearing, if it were determined that plaintiff was entitled to relief, a further hearing would be afforded whereat plaintiff might establish defendants' similar conduct with respect to other advertisements, and might prove specific damages for which defendants might be liable.
The facts are not in great dispute. Plaintiff, as part of its advertising department, maintains or employs specialists who suggest and make up advertising designs and layouts which are shown to prospective advertisers. The advertising matter is prepared upon the request and suggestions of advertisers or on plaintiff's own initiative, in order to induce them to enter their orders for the advertising. In certain cases plaintiff engages an outside agency to aid in preparing special advertising matter.
Shortly after certain advertisements had appeared in plaintiff's newspaper, similar advertisements and, in some cases, identical advertisements appeared in defendants' newspaper. These advertisements in defendants' newspaper result from either defendants' solicitation of plaintiff's advertisers, or at the request of some of the advertisers without any solicitation.
Defendants also maintain an advertising department, and there are many advertisements in its paper besides those reproduced from plaintiff's newspaper. Defendants' paper is published by use of photo-offset, a comparatively inexpensive process.
Each advertiser signs an agreement with plaintiff which partly provides as follows:
"7. ASSIGNMENT  For value received, advertiser hereby assigns to the ABC Newspaper, Inc., all right, title and interest to all layouts of advertisements placed with the ABC Newspaper which represent the creative efforts of the newspaper and/or utilization of its own illustrations, labor, composition or material. Advertiser understands that because of said assignment, he cannot authorize photographic *78 or other reproduction of any such advertising layout appearing in the ABC Newspaper in any other publication without the express written consent of the ABC Newspaper, Inc. It is further understood that this assignment does not preclude advertiser from supplying to other publications similar or identical material or information for production of advertisements by such publication or from suggesting the content or form of such advertisement."
The advertising which appears in plaintiff's newspaper is not protected by federal copyright statutes. 17 U.S.C.A. § 1.
Plaintiff relies upon the following cases for support of its contention that defendants' conduct in copying the advertisements merits the relief sought: International News Service v. Associated Press, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918); Metropolitan Opera Association v. Wagner-Nichols R. Corp., 199 Misc. 786, 101 N.Y.S.2d 483 (Sup. Ct. 1950), aff'd 279 App. Div. 632, 107 N.Y.S.2d 795 (App. Div. 1951); Pottstown Daily News Publishing Co. v. Pottstown Broadcasting Co., 411 Pa. 383, 192 A.2d 657 (1963); Pottstown Daily News Publishing Co. v. Pottstown Broadcasting Co., 247 F. Supp. 578 (E.D. Pa. 1965), and Grove Press, Inc. v. Collectors Publication, Inc., 264 F. Supp. 603 (C.D. Cal. 1967).
In International News Service defendant, a competing news service, was restrained by the court from transmitting news for commercial use in competition with complainant. In that case defendant copied news from bulletin boards and early editions of complainant's newspapers and then sold same, either bodily or after rewriting it, to defendant's customers, in direct competition to plaintiff. This conduct, the court held, constituted unfair competition under the circumstances.
In Metropolitan Opera Association defendant was restrained from making and selling phonograph recordings of the "live" broadcasts of the performances of the plaintiff opera company. It was held that this practice constituted unfair competition as to both plaintiff and intervenor, Columbia Records, which had the contract to produce recordings of the opera. Defendant's conduct deprived plaintiff of any *79 benefit for its performances and enabled it to compete unfairly and advantageously in the market for the sale of the Columbia records. Additionally, the court held that defendant's action also constituted an interference with contractual relations between plaintiff and Columbia Records.
In the Pottstown Daily News Publishing Co. cases plaintiff, the publisher of a newspaper, was granted an injunction against defendant radio broadcasting company, restraining it from appropriating the plaintiff's local news reports without its permission or consent and using it to its own advantage. The news broadcast by defendant, it was found, was appropriated in broadcasts completed before all the papers from which the news was taken was distributed, and while the news was still "hot."
Underlying the decisions in the Pottstown Daily News Publishing Co. cases is the proposition that the protection which the law affords to competition does not and should not countenance the usurpation of a competitor's investment and toil. Substantially this was the basis of International News and Metropolitan Opera cases.
In Grove Press, Inc. plaintiff had expended substantial moneys in the preparation of an edition of an original work entitled "My Secret Life," an autobiography which was in the public domain. Plaintiff's edition, after it was released for sale, was reproduced by defendant through an offset lithography process and then was sold in competition with plaintiff's edition. The court granted the relief sought by plaintiff on the ground that defendant's conduct constituted unfair competition.
These cases, standing alone, ordinarily would be persuasive. However, there are important distinguishing features between the factual complexes of these cases and that of the instant case. First, it may be presumed that plaintiff includes in the cost to the advertiser an amount which compensates it not alone for the actual circulation of the advertisement in the newspaper, but also for its expenditures in preparing the advertisement. Second, advertisers are principally concerned *80 with and purchase public exposure of their respective advertisements. In any event, the law of this State applies as hereinafter observed.
It is assumed that plaintiff fears that advertisers may curtail the series or frequency of exposure if defendants are permitted to duplicate the advertisements. This apprehension was not supported. I find that there is no substantial competition between the two periodicals. The proofs disclose that plaintiff has not lost any customers to defendants. Conversely it was established that defendants have lost certain advertisers who continue to advertise in plaintiff's newspaper.
Defendants rely upon Sears, Roebuck & Co. v. Stiffel Lighting Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), reh. den. 376 U.S. 973, 84 S.Ct. 1131, 12 L.Ed.2d 87 (1964), and Compco Corp. v. Day Brite Lighting Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), reh. den. 377 U.S. 913, 84 S.Ct. 1162, 12 L.Ed.2d 183 (1964). In these cases the United States Supreme Court held that a state may not impose liability or prohibit the copying of an article which is not protected by a federal patent.
They also cite Cable Vision, Inc. v. KUTV, Inc., 335 F.2d 348 (9 Cir. 1964), which reversed a lower court's decision in enjoining a community antenna company from using plaintiff's television programs on the holding of International News Service, supra. The court, in reversing, felt that Sears and Compco made it clear that only actions for copyright infringement, or such common law actions as are consistent with primary right of public access to all in the public domain, will lie. The facts in the Sears and Compco cases are closer to the facts in the case at bar.
To the degree that it does not conflict with the Federal Constitution, the law of each state controls the common law action for unfair competition. Sears, Roebuck & Co. and Compco, supra; Purcell v. Summers, 145 F.2d 979 (4 Cir. 1946); Lahr v. Adell Chemical Co., 300 F.2d 256 (1 Cir. 1962); Flexitized, Inc. v. National Flexitized Corp., 335 F.2d *81 774 (2 Cir. 1964), cert. den. 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799 (1965).
It is clear in this State that in the absence of a patent, there is nothing to prevent the imitation or reproduction of a product, provided the imitator does not misrepresent to the public that his product is made by others or cause confusion as to whose product it is. The courts will consider, however, whether the product has acquired a secondary meaning or an identification coming from appearance, and whether the imitation was obtained by fraud or in breach of a confidential relationship. Squeezit Corp. v. Plastic Dispensers, 31 N.J. Super. 217, 222 (App. Div. 1954); French-American, etc. v. Park Plastics Co., 20 N.J. Super. 325 (App. Div. 1952), aff'g 14 N.J. Super. 450 (Ch. Div. 1951). In Squeezit the court refused to restrain a competitor from reproducing and selling a plastic catsup dispenser almost exactly the same in size, contour and color as that designed, produced and placed upon the market by plaintiff.
Similarly, in Adolph Gottscho, Inc. v. Bell-Mark Corp., 79 N.J. Super. 156, 168 (Ch. Div. 1963), it was held that copying a competitor's product and selling it in competition to him is not per se actionable.
Cascade Pools Corp. v. Consolidated Pools & Equipment Corp., 68 N.J. Super. 321 (Ch. Div. 1961), involved defendant's use of advertising material based partly on magazine articles describing swimming pools, prepared and published by plaintiff and which included pictures of pools manufactured by plaintiff. The court held that it would not enjoin defendant from using such advertising material in connection with its own swimming pools, where there was involved no question of misrepresentation or secondary meaning. The court said:
In the present case, as already noted, the defendant has not by use of the reprints passed itself off to the public as the plaintiff or passed off its products as those of the plaintiff; nor has it misrepresented qualities and features of its pools or of the plaintiff's pools. And no question of secondary meaning is involved.
*82 With all of the elements absent which would make the use of appropriated advertising subject to injunction, it follows that no interlocutory relief should be granted where the magazine material reprinted is not the plaintiff's property and is not even advertising. [at 329-330]
I cannot find any essential distinguishing features between the principles as laid down in our New Jersey cases and the principles which should apply to the case at bar. Consequently, I am obliged to hold that plaintiff is not entitled to an injunction on the ground of unfair competition.
Plaintiff further contends that it is entitled to the relief sought on the grounds that defendants designedly and purposely interfered with plaintiff's contractual rights with its advertisers, and knowingly encouraged and participated in effecting a breach of its agreement with each of the advertisers.
Apart from the fact that plaintiff has not shown any loss in advertisers or frequency of advertising by any of them as the result of defendants' conduct, there has been no showing that any of the defendants knowingly encouraged or participated in effecting a breach of the agreement. Louis Schlesinger Co. v. Rice, 4 N.J. 169 (1950).
The last sentence of the above-quoted clause of the contract between plaintiff and its advertisers provides that the assignment of the advertisers' right, title and interest to all layouts of advertisements through plaintiff will not preclude the advertiser "from supplying to other publications similar or identical material or information for production of advertisements by such publication, or from suggesting the content or form of such advertisements."
I interpret the forepart of the clause to mean that the advertiser may not authorize photographic or other reproduction of the advertising layout appearing in plaintiff's publication, without the express written consent of plaintiff. If defendants have the legal right, as I find they have under the circumstances, to copy the advertisement, then this clause, insofar as the factual situation before me is concerned, is without *83 legal efficacy. The granting of the right by the advertiser would be merely illusory.
If plaintiff has any complaint because the advertiser condoned and paid for the republication of the advertisement in defendants' newspaper, that is a matter which should be settled between plaintiff and the advertiser.
Accordingly, plaintiff is not entitled to the injunction or any of the other relief sought against any of the defendants.
Judgment dismissing the complaint will therefore be entered. No costs.