**TRUSTCO BANK, NATIONAL ASSOCIATION, Plaintiff,**

v.

**GLENS FALLS NATIONAL BANK AND TRUST COMPANY, N.A., Defendant.**

No. 95–CV–774.

United States District Court, N.D. New York.

Nov. 3, 1995.

Heslin & Rothenberg, P.C. (Susan E. Farley, of counsel), Albany, NY, for plaintiff.

Bartlett, Pontiff, Stewart & Rhodes, P.C. (Richard J. Bartlett, of counsel), Glens Falls, NY, for defendant.

SCULLIN, District Judge.

## DECISION AND ORDER

This matter is before the Court on the motion of plaintiff Trustco Bank, National Association ("Trustco") for a preliminary injunction preventing the defendant, Glens Falls National Bank and Trust Company, N.A. ("GFN") from using the mark, "Home Town Bank." The complaint was filed June 7, 1995, alleging causes of action for dilution of service mark pursuant to N.Y.Gen.Bus. Law § 368–d, trademark infringement pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), and unfair competition under New York common law. GFN agreed, without prejudice, to discontinue use of the mark until the Court rendered its decision on the present motion.

Oral argument was heard on August 10, 1995, in Albany, New York. The Court, having considered all the submissions and arguments made by both parties, denies plaintiff's motion for a preliminary injunction for the reasons set forth below.

## BACKGROUND

Plaintiff Trustco has provided a full range of banking services to the general public, both individuals and businesses, for over 90 years. Initially, Trustco's banking services were offered and advertised in the "Capital District"[1] and a few surrounding areas. Over time, it expanded into more surrounding areas, opening branches in Washington and Warren counties.[2]

According to Trustco, it has used the unregistered mark "Home Town Bank" continuously since 1984 on virtually all of its promotional and banking materials, and has spent approximately $14 million promoting Trustco's banking services using the mark. In 1984, Trustco was known as Schenectady Trust, and had no presence in Glens Falls, New York, which is located in Warren County. Nonetheless, it advertised in newspapers and on television stations that reached into Glens Falls and the Warren and Washington County areas, and claims its mark was thus well-established there. Trustco registered its service mark, "TRUSTCO BANK, Your Home Town Bank," with the New York Department of State on July 1, 1994.

Defendant GFN was founded in Glens Falls, New York, in 1851. Most of its offices are located in Washington and Warren counties, with a few branches in neighboring Essex and Saratoga counties. Both Trustco and GFN offer the same services and use the same media for advertising.

According to GFN, it first used the phrase "hometown bank" in 1984 in the text of an employee's quote, and has "consistently emphasized the hometown flavor of its banking services, even when not utilizing the phrase." Hoy Aff. ¶ 5. When Trustco first opened a branch office in Warren County[3] in early 1995, the GFN branch office located nearby began flying a banner that read, in part, "The Original Hometown Bank," and placed advertisements in newspapers using this phrase.

On March 15, 1995, Trustco advised GFN of Trustco's service mark registration and requested that GFN cease use of "The Original Hometown Bank." On March 24, 1995, GFN informed Trustco that, in its opinion, GFN's use of that phrase did not infringe upon Trustco's service mark. This action followed.

---

1. The Court finds the Capital District to be comprised of Schenectady, Albany, and Rensselaer counties.

2. Located north of the Capital District.

3. Hudson Falls, New York.

## DISCUSSION

■ The plaintiff's Lanham Act claim provides the basis of the Court's jurisdiction over the subject matter of this action. The purpose of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), is to protect competitors and the public from misleading advertising that could result in unfair competition. *Invicta Plastics (USA) Ltd. v. Mego Corp.*, 523 F.Supp. 619, 623 (S.D.N.Y.1981). It prohibits false descriptions of products and services and their origins, and was meant to prevent consumer confusion about the relationship between a trademark holder and its competitor. *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir. 1986); *Wojnarowicz v. American Family Ass'n*, 745 F.Supp. 130, 141–42 (S.D.N.Y. 1990). However, the Lanham Act is construed narrowly when unauthorized use of a trademark is for the purpose of communicating a message, rather than for identifying the origin of a product or service. *Yankee Pub. Inc. v. News America Pub. Inc.*, 809 F.Supp. 267, 276 (S.D.N.Y.1992).

### Preliminary Injunction Standard

■ To obtain a preliminary injunction, a party must show (1) irreparable harm; and (2) either (a) a likelihood of success on the merits or (b) a sufficiently serious question going to the merits to make it a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting preliminary relief. *Jackson Dairy, Inc. v. H.P. Hood and Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam); *Church of Scientology Int'l v. Elmira Mission*, 794 F.2d 38, 41 (2d Cir.1986).

## I. IRREPARABLE HARM

### Plaintiff's Delay

■ The defendant argues that the plaintiff's delay in seeking a preliminary injunction obviates its claim of irreparable harm. Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiff's rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action. Significant delay in applying for injunctive relief in a trademark case tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction for trademark infringement.

*Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (1985) (relief denied where plaintiff sought a preliminary injunction ten weeks after learning directly of defendant's plans to open a branch office with a similar name, and more than nine months after it received notice of same through the press).

■ If the delay was caused by the plaintiff's ignorance of the defendant's competing service, or the plaintiff's good faith efforts to investigate the alleged infringement, the delay will not negate the presumption of irreparable harm. *Tough Traveler, Ltd. v. Outbound Products*, 60 F.3d 964, 967–68 (2d Cir.1995).[4] "Furthermore, delay while reasonably attempting to settle the matter out of court does not undercut preliminary injunctive relief." *American Direct Marketing v. Azad Int'l*, 783 F.Supp. 84 (E.D.N.Y.1992).

■ The complaint in the present action was filed thirteen weeks after the plaintiff allegedly learned of GFN's use of "The Original Hometown Bank," and six months after the defendant's first ad allegedly appeared in the Glens Falls paper. The plaintiff claims the delay included a wait of two weeks for GFN's response to Trustco's March 15 letter. When it learned that the defendant would not voluntarily discontinue using the phrase "The Original Hometown Bank," Trustco began interviewing, assessment, and hiring of special trademark counsel to handle this matter. The action was commenced within twelve days of retaining trademark counsel, including the Memorial Day weekend.

The Court finds that the plaintiff has not delayed so long as to warrant a finding that

---

4. Plaintiff's counsel was on the plaintiff-appellee's brief in *Tough Traveler*. In spite of presumption, Second Circuit vacated preliminary injunction because of plaintiff's delay of more than a year in seeking injunction.

it assumed responsibility for any irreparable injury it may have suffered.

### Likelihood of Confusion

■ Where a mark warrants protection under the Lanham Act, the potential for irreparable harm in the absence of preliminary relief may be demonstrated by showing that consumers are likely to be misled or confused as to the source of the services in question. *Western Publishing Co. v. Rose Art Industries,* 910 F.2d 57, 59 (2d Cir.1990); *Church of Scientology,* 794 F.2d at 41 ("a preliminary injunction should usually issue when the use of a mark creates a likelihood of confusion in the consumers' minds as to the ownership or sponsorship of a product"). This presumption exists "because damage to reputation is difficult to prove or quantify," *American Direct Marketing,* 783 F.Supp. at 91, as is the amount of profits earned on the infringing item. *Omega Importing Corp. v. Petri–Kine Camera Co.,* 451 F.2d 1190, 1195 (2d Cir.1971), *quoted in Tough Traveler,* 60 F.3d at 968.

■ In determining whether a likelihood of confusion is present, eight factors are considered, some of which are also considered in the context of secondary meaning. These factors are referred to as the *Polaroid* factors: (1) the degree of similarity between the two marks, (2) the proximity of products, (3) actual confusion, (4) the defendant's good faith in adopting its mark, (5) the likelihood that the prior user will bridge the gap between the products' markets, (6) the strength of the plaintiff's mark, (7) the quality of defendant's products, and (8) the sophistication of the consumers. *Western Publishing Co., Inc. v. Rose Art Industries,* 910 F.2d 57, 61 (2d Cir.1990); *Polaroid Corp. v. Polaroid Elecs. Corp.,* 287 F.2d 492 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961).

■ Trustco's mark, "Home Town Bank" or "Your Home Town Bank," and GFN's slogan, "The Original Hometown Bank" are, obviously, similar. Both Trustco and GFN offer the same types of banking services.

Thus, the first two factors at least seem to weigh in favor of finding a likelihood of confusion. The Court finds, however, that the remaining factors either weigh more strongly against finding a likelihood of confusion, or fail to support the plaintiff's argument that such a likelihood exists.

Perhaps the most persuasive factor on this issue is the defendant's intent in using the mark. Trustco argues that GFN's banner, raised upon the opening of a nearby Trustco branch, is evidence that GFN adopted "The Original Hometown Bank" with a predatory intent. GFN, however, argues that it believed the phrase "hometown bank" to be non-protectable. It is undisputed that GFN serviced the Glens Falls area long before Trustco and it appears it adopted its new slogan, "The Original Hometown Bank," in reaction to Trustco's representation of itself as a "hometown" bank. The Court finds that GFN's adoption of this new slogan was made in good faith.

■ With respect to whether actual confusion exists, plaintiff Trustco submitted the results of a survey conducted at two shopping malls located in Clifton Park and Albany. Farley Aff.Ex. A (Docket #11). Trustco contends that the survey shows the strength of its mark and actual confusion among bank customers. Of the 300 people surveyed, most attributed both Trustco's slogan ("Your Home Town Bank") and GFN's slogan ("The Original Hometown Bank") to Trustco. None of the survey respondents were asked about *both* slogans. Instead, half of the respondents were asked about Trustco's slogan, the other half about GFN's. In addition, GFN has no branches near the two malls. Tulley Aff.Ex. A. The Court does not find this survey helpful in determining the strength of Trustco's mark or whether potential bank customers are actually confused.[5]

■ The factor of the prior user's likelihood of bridging the gap between the products examines whether the prior user may wish to enter the defendant's market in the future. As Trustco has already entered

---

5. The research firm that conducted the survey also described its findings in conclusory legal terms, a practice discouraged by the Court. *See* Farley Aff.Ex. A (Docket #11).

GFN's market, this factor is irrelevant. *See Paddington Corp. v. Attiki Importers & Distributors, Inc.,* 996 F.2d 577, 586 (2d Cir. 1993).

█ The sophistication of consumers is often an important factor in trademark because sophisticated purchasers might more easily discern distinctions between products when making decisions about whose product to purchase. Although Trustco claims that both banks serve a significant number of unsophisticated consumers, it does not explain how a potential consumer's level of sophistication would affect his or her decision in choosing a bank. Further, Trustco has alleged that both banks offer the same services and advertise in the same. markets. Thus a potential consumer's level of sophistication would not aid him or her in distinguishing between the two banks. Therefore, this factor is irrelevant in the present case.

Finally, Trustco has made no allegations concerning the quality of GFN's services. Therefore, this factor is also irrelevant to the present discussion.

After carefully weighing the eight *Polaroid* factors, the Court concludes that the plaintiff has failed to establish that there would be a likelihood of confusion sufficient to cause irreparable harm. Even assuming the presence of irreparable harm, however, the Court finds that the plaintiff has not succeeded in sustaining its burden of proof as to the second prong of the preliminary injunction standard.

## II. LIKELIHOOD OF SUCCESS ON THE MERITS OR A SUFFICIENTLY SERIOUS QUESTION GOING TO THE MERITS TO MAKE IT A FAIR GROUND FOR LITIGATION AND A BALANCE OF HARDSHIPS TIPPING DECIDEDLY TOWARD THE PARTY REQUESTING PRELIMINARY RELIEF

### A. *Likelihood of Success on the Merits*

█ Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides a federal cause of action for infringement of unregistered service marks. To succeed on such a claim, the service mark owner must show (a) likelihood that an appreciable number of ordinary, prudent purchasers or prospective purchasers would be misled or confused as to the source, sponsorship, affiliation or approval of the services, and (2) that the service mark is distinctive, either inherently, or by the acquisition of secondary meaning. *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). Similarly, an injunction for dilution under N.Y.Gen. Bus.Law § 368–d requires the plaintiff to show (1) that its mark is distinctive or has acquired secondary meaning, and (2) there is likelihood of dilution. *Deere & Co. v. MTD Products, Inc.,* 41 F.3d 39 (2d Cir.1994). The Court finds that the plaintiff is unlikely to succeed on these two claims because it has not established that the phrase "Home Town Bank" by itself is sufficiently distinctive or that it has acquired secondary meaning that would warrant its protection as a service mark.

### *Inherent Distinctiveness*

█ There are four categories of marks: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. Generic marks are never considered distinctive. Descriptive marks are also not inherently distinctive, but may acquire secondary meaning that makes them distinctive. Suggestive marks and arbitrary or fanciful marks are deemed to be inherently distinctive without a showing of secondary meaning.

█ A suggestive mark is one that "requires imagination, thought and perception to reach a conclusion as to the nature of [its] goods" or services. *C.L.A.S.S. Promotions v. D.S. Magazines, Inc.,* 753 F.2d 14 (1985) (quoting *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 11 (2d Cir.1976)). Descriptive marks merely describe the attributes of a product or service and are not inherently distinctive. *Two Pesos,* 505 U.S. at 767–68, 112 S.Ct. at 2757.

█ Plaintiff initially argued that its mark is suggestive. At oral argument, plaintiff conceded that the mark may be descriptive, but if so, it has acquired secondary meaning. Defendant argues that the mark is descriptive and the plaintiff has failed to

establish secondary meaning. The parties have provided little more than argument to assist the Court in making this determination.

Professor McCarthy suggests a series of questions courts should consider when trying to determine whether a mark is descriptive or suggestive, questions derived from various tests that have been applied. 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §§ 11.21, 11.22 (3d ed. 1992). First, how much imagination is required of the potential customer in trying to cull a direct message from the mark about the quality or characteristics of the service? Is some reflection or multi-stage reasoning process necessary? The more imagination and thought that is required, the more likely the mark is suggestive. Here, the Court finds that it would not require much imagination, reflection, or multi-stage reasoning to infer that, by calling itself the "Home Town Bank," Trustco intends to convey a friendly, service-oriented atmosphere.

The second question is, does the mark so closely tell something about the product or service that other sellers of like products would be likely to want to use the term in connection with their goods? If not, the mark is suggestive. Here, "hometown" tells very little about the services a bank provides, though it does convey some idea of the way services are provided. It is likely that other banks would want to use the term in connection with their own services.

Third, are, in fact, other sellers now using this term to describe their products? Even if a mark is descriptive but has attained secondary meaning, if many others in other product markets are using the term, the mark may be labeled "weak" and entitled only to narrow protection. Here, the defendant has shown that other non-banking businesses use the term "Hometown" in their titles. Hoy Aff.Ex. Q.

Fourth, even though the mark may tell something about the goods or services, is it just as likely to conjure up some other, purely arbitrary connotation? If so, the mark is suggestive. Here, the Court finds that "Home Town Bank" is not likely to conjure up a purely arbitrary connotation, but rather a particular atmosphere or orientation toward serving its customers.

Finally, are buyers likely to regard the mark really as a symbol of origin, or merely as another form of self-laudatory advertising? Although the plaintiff suggests that, over time, consumers in a particular market have come to identify "Home Town Bank" with Trustco, it has not shown that these potential customers regard the use of the phrase as anything other than a form of self-laudatory advertising.

Considering all of the above, and on the record presently before it, the Court finds that the mark "Home Town Bank" is descriptive, and thus not inherently distinctive. Therefore, for "Home Town Bank" to be sufficiently distinctive to warrant service mark protection, Trustco must show that the mark has acquired secondary meaning.

### Secondary Meaning

Determining whether a service mark has acquired secondary meaning involves an examination of the following factors: advertising expenditures, consumer studies linking the mark to a source, unsolicited media coverage of the product or services, sales success, attempts to plagiarize the mark, length and exclusivity of the mark's use. *Centaur Communications v. A/S/M Communications*, 830 F.2d 1217, 1222 (2d Cir.1987). "No single factor is determinative, and every element need not be proved." *Thompson Medical Co. v. Pfizer Inc.*, 753 F.2d 208, 217 (2d Cir.1985), *quoted in Centaur Communications*, 830 F.2d at 1222. The evidence submitted by the parties relative to these factors is as follows.

### Advertising Expenditures:

Trustco claims to have spent over $14 million advertising itself as the "Home Town Bank" in newspapers and on radio and television. Although these expenditures were indeed large, Trustco does not explain how its efforts were effective in causing the **relevant** group of consumers to associate "Home Town Bank" with Trustco. *See Centaur Communications*, 830 F.2d at 1222–23. *See also* McCarthy on Trademarks § 15.19.

*Consumer Studies Linking the Mark to a Source:*

For reasons already discussed above, the Court does not find Trustco's survey to be helpful in determining whether its use of "Home Town Bank" has achieved secondary meaning.

*Unsolicited Media Coverage:*

Trustco submitted several newspaper articles, unsolicited by Trustco, which link Trustco with the phrase "Home Town Bank." Terry Aff.Ex. C. However, most of the articles, which include news stories, editorials, and letters to the editor, describe actions taken by Trustco that appear to contradict its claim to be a "Home Town Bank."

Unsolicited media coverage was considered in *Harlequin Enterprises, Ltd. v. Gulf & Western Corp.*, 644 F.2d 946 (2d Cir.1981), to determine whether a romance novel cover format had acquired secondary meaning. The unsolicited media coverage in that case described the enthusiasm and loyalty shown by Harlequin's readers, not Harlequin's use of a particular cover format. *See also Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.)*, 544 F.2d 1167, 1174 (2d Cir.1976) (Court considered newspaper articles that indicated a recognition of plaintiff as a designer of a particular product). The articles submitted by Trustco do not indicate a recognition of Trustco as the provider of the type of services one would expect from a "Home Town Bank", nor that Trustco has engendered much enthusiasm or loyalty from its customers—quite the opposite.

*Sales Success:*

Without explaining the connection, Trustco alleges that it has enjoyed "considerable commercial success" since it began using "Home Town Bank."

*Attempts to Plagiarize the Mark:*

This factor is also referred to as "copying of the mark." GFN's slogan, "The Original Hometown Bank," is obviously similar to Trustco's mark, and Trustco urges the Court to accept this similarity as evidence of copying.

In *Centaur Communications*, the Second Circuit looked at whether the defendant, publisher of "ADWEEK's Marketing Week," had intentionally copied the name of the plaintiff's publication, "Marketing Week." The Court found that it did, but based its finding on the defendant's failure to provide a credible explanation for the change in the name of its magazine that did not involve copying. 830 F.2d at 1224.

Here, defendant GFN has offered a credible explanation for using "The Original Hometown Bank" slogan in its advertisements. GFN serviced the Glens Falls area long before Trustco. GFN believed the phrase "hometown bank" to be non-protectable and used it in a manner not likely to engender confusion among potential customers.

*Length and Exclusivity of the Mark's Use:*

From the record before it, the Court finds that Trustco has used "Home Town Bank," in some form, longer and more extensively than GFN. When Trustco was still going by the name Schenectady Trust, the slogan it used in its advertising was "The Capital Region's Home Town Bank" (usually preceded by "Trust in Us"). Terry Reply Aff.Ex. A. Trustco lists 424 forms or bank documents upon which its full mark, "Trustco Bank, Your Home Town Bank," appears. Terry Aff. ¶ 4. Further, before GFN used "Hometown Bank," Trustco's reference to itself as the "Home Town Bank" appears to have been unique in the Schenectady, Albany, and Glens Falls banking markets. *See* Terry Aff. ¶ 7.

Nonetheless, after considering all of the above evidence together and weighing it carefully, the Court finds that the phrase "Home Town Bank" by itself has not acquired the secondary meaning necessary to enjoin GFN's use of that phrase in its own slogan. *See generally* McCarthy on Trademarks, Chapter 15. Thus, Trustco is not likely to succeed on the merits of its infringement claim under the Lanham Act or its dilution claim under New York law.

**B.** ***Sufficiently Serious Question Going to the Merits that Makes It a Fair Ground for Litigation and a Balance of Hardships Tipping Decidedly Toward the Party Requesting Relief***

The Court assumes, for the purposes of this motion, that a serious question has

been presented that goes to the merits of this dispute and makes it a fair ground for litigation. The plaintiff argues that the balance of the hardships that would result from the Court's denial of the plaintiff's motion for a preliminary injunction tip in favor of the plaintiff.

Plaintiff's general allegations of hardship include customer confusion, dilution of its service mark, and harm to its goodwill and reputation. Mainly, however, the plaintiff points to the fact that GFN agreed to stop using "The Original Hometown Bank" pending this Court's decision, and argues that the ease with which GFN could stop using the mark, as opposed to the difficulty Trustco would have in doing so, is evidence of the balance of hardships tipping in Trustco's favor. If not allowed to use its mark in Warren and Washington counties, Trustco argues, it would have to change all of the forms and documents that say "Trustco Bank, Your Home Town Bank." This argument, though, seems disingenuous. Denial of Trustco's motion will not prevent it from using its service mark; it may still continue to use its mark as it previously did.

On the other side of the equation, however, the Court finds that GFN would suffer hardship if it were enjoined from using the phrase "hometown bank" to describe the atmosphere it has been attempting to provide to its customers since long before Trustco had branches in the area. Balancing the hardships that would be suffered by either party, the Court finds that the balance of hardships does not tip decidedly toward the plaintiff.

**WHEREFORE**, based on the findings above, it is hereby

**ORDERED** that plaintiff's motion for a preliminary injunction is **DENIED**.