POLITAN, District Judge.
 

 This matter comes before the Court on the application of plaintiff Genovese Drug Stores Inc. for a preliminary injunction against defendant TGC Stores, Inc., seeking to enjoin defendant from using the name take good care for its new health care stores. The Court conducted an evidentiary hearing on August 12-13, 1996, and reserved decision. For the reasons stated herein, plaintiffs application for preliminary relief is DENIED.
 

 BACKGROUND
 

 Plaintiff operates a chain of retail drug stores in New York, New Jersey and Connecticut. Plaintiff has been in business for over seventy years. Defendant is a new company, specializing in home health care products. Within the last few months, defendant opened its first two stores in New Jersey.
 
 [1]
 

 Nine years ago, plaintiff registered the trademark ‘We’ll Take Good Care of You” as its slogan. Recently, defendant named its stores take
 
 good
 
 care. Plaintiff alleges that the name chosen by defendant infringes on its trademark. Accordingly, plaintiff filed the instant Complaint and an Order to Show Cause why defendant should not be preliminarily enjoined from using said name pending the outcome of this case.
 

 DISCUSSION
 

 The standards for issuance of a preliminary injunction in Lanham Act cases, as in all others, are well-settled. In ruling on a motion for preliminary injunction, the court must consider: (1) the likelihood that the plaintiff will prevail on the merits; (2) the extent to which the plaintiff is being irreparably harmed; and, where relevant, (3) the extent to which the defendant or other interested persons will suffer irreparable harm if the injunction is issued; and (4) the extent to which the public interest favors the granting of the requested relief.
 
 See Merchant & Evans, Inc. v. Roosevelt Bldg. Prods. Co., Inc.,
 
 963 F.2d 628, 632-33 (3d Cir.1992);
 
 Hoxworth v. Blinder, Robinson & Co., Inc.,
 
 903 F.2d 186, 197-98 (3d Cir.1990).
 
 See also Morton v. Beyer,
 
 822 F.2d 364, 367 (3d Cir.1987). “[T]he grant of injunctive relief is an extraordinary remedy ... which
 
 *344
 
 should be granted only in limited circumstances.”
 
 Frank’s GMC Truck Ctr., Inc. v. General Motors Corp.,
 
 847 F.2d 100, 102 (3d Cir.1988) (citing
 
 United States v. City of Philadelphia,
 
 644 F.2d 187, 191 n.1 (3d Cir. 1980)).
 
 See also Falter v. Veterans Admin.,
 
 632 F.Supp. 196, 201 (D.N.J.1986) (“There is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing [of] an injunction.”).
 

 An injunction should issue only if the plaintiff produces evidence sufficient to convince the court that all four factors favor preliminary relief.
 
 Opticians Ass’n of Amer. v. Independent Opticians of Amer.,
 
 920 F.2d 187, 192 (3d Cir.1990). Because the Court finds that plaintiff has not successfully carried its burden of showing a reasonable probability of eventual success on the merits and because the irreparable harm to defendant outweighs any harm to plaintiff, the Court will deny the instant application for preliminary relief.
 

 A. LIKELIHOOD OF SUCCESS ON THE MERITS
 

 Plaintiffs Complaint asserts six causes of action: (1) trademark infringement, under 15 U.S.C. § 1114; (2) dilution, pursuant to 15 U.S.C. § 1125; (3) false designation of origin, false description and representation, and false advertising, under 15 U.S.C. § 1125(a); (4) unfair competition under state law, N.J.S.A 56:4-1
 
 et seq.;
 
 (5) common law trademark infringement, unfair competition, misappropriation and passing off; and (6) common law dilution.
 

 1. Trademark Infringement
 

 Plaintiff alleges a cause of action for trademark infringement pursuant to Section
 
 32,
 
 of the Lanham Act, 15 U.S.C. § 1114. To succeed on such a claim, the plaintiff must establish: (1) its mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant’s use of the mark is likely to create confusion.
 
 [2]
 

 Opticians Ass’n,
 
 920 F.2d at 192 (citing
 
 Pedi-Care, Inc. v. Pedi-Care Nursing, Inc.,
 
 656 F.Supp. 449, 453 (D.N.J.1987)). The Court finds, and defendant does not challenge, that plaintiff has presented evidence to establish the first two elements. Accordingly, the issue before the Court is the requirement of confusion between the two marks.
 

 The Third Circuit, in
 
 Scott Paper Co. v. Scott’s Liquid Gold, Inc.,
 
 annunciated the factors which the Court must analyze to determine whether two marks are confusingly similar. 589 F.2d 1225, 1229 (3d Cir.1978). The ultimate inquiry is whether the marks create a
 
 likelihood
 
 of confusion. Plaintiff argues that a more relaxed standard, merely requiring a showing that the marks create a
 
 possibility
 
 of confusion, is applicable.
 
 See Versa Prods. Co., Inc. v. Bifold Co. (Mfg.), Ltd.,
 
 50 F.3d 189, 200 (3d Cir.) (citing
 
 Merchant & Evans,
 
 963 F.2d at 637-38),
 
 cert. denied,
 
 — U.S. -, 116 S.Ct. 54, 133 L.Ed.2d 19 (1995);
 
 Country Floors, Inc. v. Partnership Composed of Gepner & Ford,
 
 930 F.2d 1056, 1065 (3d Cir.1991);
 
 Telechron, Inc. v. Telicon Corp.,
 
 198 F.2d 903, 908-09 (3d Cir.1952).
 

 “Where an alleged infringer was new to an area and the plaintiff was well-established, this court has at times replaced the ‘likelihood of confusion’ requirement with a lower ‘possibility of confusion’ standard.”
 
 Versa,
 
 50 F.3d at 200. The primary reasons for lowering the standard in this situation are “the general lack of legitimate reasons for copying a competitor’s mark ... and the
 
 *345
 
 high degree of reliance by consumers on trademarks as indicators of the source of products.”
 
 Id.
 
 at 201. The possibility of confusion test, however, only applies when the junior user and the senior user are in the same field.
 
 Barre-National, Inc. v. Barr Lab., Inc.,
 
 773 F.Supp. 735, 740 (D.N.J.1991). This requires the Court to determine and compare the relevant markets of the two parties.
 
 Id.
 
 (citing
 
 Country Floors,
 
 930 F.2d at 1065).
 

 In the case
 
 sub judice,
 
 plaintiff has operated retail drug stores for over seventy years. The pharmacy department is touted as the “heart” of plaintiffs business.
 
 (See
 
 Ex. D10). Like most retail drug stores, plaintiffs objective is to provide customers with necessities,
 
 ie.,
 
 prescriptions, and then once in the store, entice them into making impulse purchases.
 

 In contrast, defendant does not operate a pharmacy, and does not intend to do so in the future. (Tr. at 84:10-14). Defendant specializes in home health care equipment; its profits are generated from the sale of “big-ticket” . items, ie., wheelchairs, seat lifts, canes, motorized carts, seated stair lifts. (Tr. at 116:8-10; 193:17-22). Furthermore, all of defendant’s low-priced items are geared towards health conscious or handicapped consumers, ie., herbal teas, medical shampoos, dermatological skin care products, large-print books and playing cards. (Tr. at 113:3-115:13; 132:7-24).
 

 Unlike plaintiffs typical drug store, which is designed in aisles similar to a small grocery store
 
 (see
 
 Ex. P25), defendant’s store features wide-open spaces which display the numerous varieties of durable medical equipment (“DMEs”) and provide sufficient area for customers to demonstrate the items.
 
 (See
 
 Ex. D16, D17, D35, D6). Moreover, defendant provides seminar rooms for counseling and fitting of equipment, such as prosthetics for mastectomy patients. (Tr. 101:6-20; 102:10-22;
 
 See
 
 Ex. D19). Plaintiff admits that defendant’s store is physically different than its own. (Tr. 82:17-21).
 

 Plaintiff, on the other hand, does not advertise DMEs and only indicates their availability by a sign within the pharmacy department in its New York stores. (Tr. 21:5-17; 21:25-22:5; 2:20-23:2). In fact, none of plaintiffs advertising budget is spent on promoting the sale of DMEs. (Tr. 23:3-5). Accordingly, the Court finds that the parties are not competing in the same field for the purposes of applying the possibility of confusion test. Hence, the Court must analyze the likelihood of confusion.
 

 The relevant factors to be considered in a determination of whether a likelihood of confusion exists, commonly referred to as the
 
 Scott
 
 factors, are: (1) the degree of similarity between the owner’s mark and the alleged infringing mark; (2) the strength of the owner’s mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time that the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) where the parties’ goods are not competitive, whether the goods are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties’ sales efforts are the same; (9) the relationship of the goods in the minds of the public because of the similarity of function; and (10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant’s market.
 
 Scott,
 
 589 F.2d at 1229. Not all of these factors need to be considered if some are dispositive.
 
 American Cyanamid Co. v. S.C. Johnson & Son, Inc.,
 
 729 F.Supp. 1018, 1021 (D.N.J. 1989).
 

 a. Similarity of the Marks
 

 Plaintiff asserts that the marks are similar because defendant’s mark is subsumed within plaintiffs mark. Plaintiff argues that “Take Good Care” is the dominant portion of its mark; and, therefore, defendant’s mark creates a commercial impression in the minds of customers. In contrast, defendant asserts that because “We’ll Take Good Care of You” is only a slogan which never appears without plaintiffs corporate name, Genovese, the marks are not substantially similar.
 

 
 *346
 
 When examining the confusing similarity of two marks, the Court must take into account the overall impression of the marks, not their individual component parts.
 
 American Cyanamid,
 
 729 F.Supp. at 1021. This Court has consistently refused to allow a plaintiff to focus on an abbreviated mark when analyzing confusing similarity.
 
 See, e.g., id.
 
 at 1021-22 (refusing to allow plaintiff to abbreviate MAXFORCE to MAX when comparing it to RAID MAX);
 
 Eagle Snacks, Inc. v. Nabisco Brands, Inc.,
 
 625 F.Supp. 571, 584 (D.N.J.1985) (declining to compare plaintiffs “honey roast” without the attached “Eagle” brand name with defendant’s “honey roasted”);
 
 Schmid Lab. v. Youngs Drug Prods. Corp.,
 
 482 F.Supp. 14, 18-19 (D.N.J. 1979) (holding that prospective purchasers will focus on brand name of condoms, not tradenames “ribbed” or “sensi-ribbed”).
 
 See also Merchant & Evans,
 
 963 F.2d at 636 (stating that the court must compare more than just the letters “Z” and “R” in the trademarks, but must also consider the words, symbols, style of printing and color scheme). In addition, a slogan can only function as a separate trademark if it creates a separate impression from the house mark.
 
 Lindy Pen Co., Inc. v. Bic Pen Corp.,
 
 725 F.2d 1240, 1245 n. 4 (9th Cir.1984) (finding marks not similar where they “are always accompanied by prominent housemarks and logos, compared to which the marks are themselves inconspicuous”),
 
 cert. denied,
 
 469 U.S. 1188, 105 S.Ct. 955, 83 L.Ed.2d 962 (1985).
 

 In the instant matter, the Court concludes that the two marks are not confusingly similar. Plaintiffs slogan is always juxtaposed with the Genovese name; it never appears alone. Furthermore, the two names connote different meanings — Genovese’s emphasis is that it will take good care of its customers; whereas, take
 
 good
 
 care teaches its customers how to take good care of themselves. (Tr. 56:3-9). In addition, the Court notes that the appearance of the two marks are drastically different. Plaintiffs slogan is printed below its name in smaller letters, all of which is in block lettering. (Tr. 17:25-19:4;
 
 see
 
 Ex. P4, P15-19, P25). In contrast, defendant’s name is printed in blue and yellow, and configured to appear as one word, with a smaller-lettered slogan underneath it.
 
 (See
 
 Ex. D35).
 

 b. Strength of Plaintiff’s Mark
 

 “ ‘The term “strength” as applied to trademarks refers to the distinctiveness of the mark, or more precisely its tendency to identify the goods sold under the mark as emanating from a particular source.’ ”
 
 Barre-National,
 
 773 F.Supp. at 742 (quotation omitted). “Distinctiveness on the scale of trademarks [and] ... [e]ommercial strength, or marketplace recognition of the mark” are measures of a mark’s strength.
 
 Fisons Horticulture, Inc. v. Vigoro Indus., Inc.,
 
 30 F.3d 466, 479 (3d Cir.1994). “The relative strength of any mark lies on a spectrum depending on whether the mark is [1] generic, [2] descriptive, [3] suggestive, or [4] arbitrary and fanciful.”
 
 Barre-National,
 
 773 F.Supp. at 743;
 
 see also Dranoff-Perlstein
 
 Assoc.
 
 v. Sklar,
 
 967 F.2d 852, 855 (3d Cir. 1992).
 

 The latter two categories are deemed inherently distinctive and are entitled to protection.
 
 Fisons,
 
 30 F.3d at 478. “Generic marks are never considered distinctive.” Tru
 
 stco Bank, Nat'l Ass’n v. Glens Falls Nat’l Bank & Trust Co.,
 
 903 F.Supp. 335, 341 (N.D.N.Y.1995); accord
 
 FM 103.1, Inc. v. Universal Broadcasting of N.Y., Inc.,
 
 929 F.Supp. 187, 194 (D.N.J.1996). “Descriptive marks are also not inherently distinctive, but may acquire secondary meaning that makes them distinctive.”
 
 Trustco,
 
 903 F.Supp. at 341. To determine whether a mark is descriptive or suggestive, the Court should consider: (1) the amount of imagination required of the customer to understand the message of the mark regarding quality or service; (2) likelihood of other sellers wanting to use the mark because it is so closely tied to the service or product; (3) use of the mark by other sellers; (4) likelihood that the mark connotes other arbitrary images or ideas; and (5) whether consumers will likely consider the mark to merely be a form of self-laudatory advertising.
 
 Id.; accord FM 103.1,
 
 929 F.Supp. at 194-95.
 

 Plaintiff has demonstrated that the trademark “We’ll Take Good Care of You”
 
 *347
 
 is recognized by the public when associated with the Genovese name.
 
 (See
 
 Ex. P20-23). Plaintiff has not shown, however, that the slogan by itself has any commercial recognition. The phrase merely advertises the type of service plaintiff intends to provide its customers. Similar to other commercial phrases, such as “We’ll Treat You Right,” plaintiffs mark requires no customer imagination and does not conjure up purely arbitrary connotations. Therefore, the Court concludes that plaintiffs mark merely has descriptive strength, and therefore is only entitled to protection if it has secondary meaning.
 

 There are no determinate elements to be considered by the court when analyzing secondary meaning.
 
 Ford Motor Co. v. Summit Motor Prods., Inc.,
 
 930 F.2d 277, 292 (3d Cir.),
 
 cert. denied, 502 U.S. 939,
 
 112 S.Ct. 373, 116 L.Ed.2d 324 (1991) (quotation omitted). “Secondary meaping is demonstrated where, ‘in the minds of the public, the primary significance of a product feature or terms is to identify the source of the product itself.’ ”
 
 Id.
 
 Hence, the court may consider “the extent of sales and advertising leading to buyer association, length of use, exclusivity of use, the fact of copying, customer surveys, customer testimony, the use of the mark in trade journals, the size of the company, the number of sales, the number of customers, and actual confusion.”
 
 Id.
 

 In the instant matter, plaintiff has spent millions of dollars on advertising its mark. (Tr. at 7:6-13). Plaintiffs advertising has appeared in newspapers, circulars, and on radio and television for the past nine years. (Tr. at 7:3-5). The Court notes, however, that said advertising always and primarily advertised the company name, Genovese. (Tr. 16:15-22; 55:21-56:2). However, the expenditure of large sums of money alone does not establish secondary meaning “unless the moving party explains how its efforts were effective in causing the relevant group of consumers to associate the mark with itself.”
 
 FM 103.1,
 
 929 F.Supp. at 196. Hence, after considering all of these factors, this Court finds they weigh in favor of finding that plaintiffs mark does not have secondary meaning.
 

 c. Actual Confusion
 

 Two of the
 
 Scott
 
 factors require the Court to examine the length of time the defendant has used the mark, and evidence of actual customer confusion.
 
 Scott,
 
 589 F.2d at 1229. Plaintiff concedes that there has been no reported incidence of actual confusion between plaintiffs slogan and defendant’s store name. (Tr. 28:6-12; 93:14-21; 94:1-8). Plaintiff argues, however, that confusion is inevitable because defendant has only been open to the public for approximately four months, defendant anticipates opening a total of thirty stores, and plaintiff plans to expand its business to include DMEs. The law requires that the Court not draw a negative inference from the lack of evidence when the defendant has only been operational for a short period of time.
 
 Versa,
 
 50 F.3d at 205 (quoting
 
 AMF Inc. v. Sleekcraft Boats,
 
 599 F.2d 341, 353 (9th Cir.1979));
 
 see also Ford Motor Co.,
 
 930 F.2d at 292 (citing
 
 Opticians Ass’n,
 
 920 F.2d at 195) (holding that proof of actual confusion is not necessary). Hence, these factors do not weigh in favor of either party.
 

 d. Defendant’s State of Mind
 

 Plaintiff opines that defendant acted in bad faith when choosing a name so closely related to its slogan. Even if defendant innocently chose the mark, plaintiff asserts that defendant acted in bad faith in not conducting an appropriate name search.
 
 See Interpace Corp. v. Lapp, Inc.,
 
 721 F.2d 460, 463 (3d Cir.1983).
 

 The mark chosen by defendant was created by the Next Group, a marketing company, as part of a $126,000 project. (Tr. at 106:23-107:11). The name ranked first on a list of many generated by the Next Group.
 
 (See
 
 Ex. P30). Robert O’Connell, President of defendant, testified at the hearing that defendant’s attorneys checked the registered trademarks, and discovered plaintiffs slogan. (Tr. at 171:9-25). After careful consideration, however, defendant determined that there was no conflict between its mark and plaintiffs slogan. (Tr. 107:23-108:13; 171:9-174:19). Because plaintiff has not presented any conflicting evidence, the Court finds that
 
 *348
 
 defendant did not act in bad faith when choosing its name.
 

 e. Competition
 

 Finally, four of the
 
 Scott
 
 factors look to similarities and differences between the parties marketing channels, customers, advertising and other factors that might suggest an association between plaintiff and defendant.
 
 [3]
 
 As discussed above, the Court finds that plaintiff and defendant do not directly compete in the same markets.
 

 Plaintiff provides DMEs through a supplier. (Tr. at 46:5-20; 91:1-6). Plaintiff does not have DMEs, such as wheelchairs or crutches, immediately available at the store, nor can customers demonstrate the equipment before making a purchase. (Tr. at 78:12-20;
 
 see
 
 Ex. D16). Rather, customers are directed to call a toll-free telephone number where the equipment can be purchased from a catalog. (Tr. at 46:5-20). Defendant, on the other hand, has all such equipment immediately available and displayed in the store. (Tr. at 100:14-19). Customers are encouraged to experiment with the different DMEs in the store before making an investment.
 
 (Id.).
 
 The interior of defendant’s store, in fact, is specifically designed to make such trials,
 
 e.g.,
 
 ramp for testing wheelchairs, stairs for testing canes, operating seat chair lift. (Tr. at 102:23-103:12). While plaintiff asserts that it intends to expand its stores to inventory DMEs (Tr. at 34:1-3; 78:21-79:5), plaintiff has not expressed an intent to change the configuration of its stores nor its relevant customer base.
 

 Moreover, defendant offers services associated "with the use of DMEs, such as counseling and fittings. (Tr. at 101:6-20; 102:10-22). Whereas, plaintiff has no direct contact with the customer and the purchase of the DMEs. (Tr. at 87:2-7). Rather, plaintiff concentrates on the provision of pharmaceuticals, and offers customers an indirect system of obtaining DMEs.
 

 In addition, plaintiff primarily markets to women between the ages of twenty-four and fifty-four, and secondarily senior citizens. (Tr. at 20:3-16). Defendant, in contrast, markets itself toward physically challenged and infirm persons and their care givers. (Tr. at 98:20-99:14; 105:2-15). Also, defendant’s customers are attentive and detail-oriented, in that they are looking for specific medical equipment to make one’s life more comfortable or accessible.
 

 Finally, plaintiff spent an exorbitant amount of time emphasizing that both stores carry many of the same low-priced items,
 
 e.g.,
 
 vitamins, back braces, health care books, batteries, adult diapers, Dr. Sholls, Neosporin ointment. (Tr. at 67:19-68:6; 74:13-75:7;
 
 see
 
 Ex. P25). However, defendant only provides those small-ticket items which in some way provide a health benefit to its customers, and these items account for less than 2% of defendant’s total sales. (Tr. at 155:17-20). These items constitute only a minute portion of defendant’s sales, as compared to the same percentage of plaintiffs profits. (Tr. at 116:2-7). In contrast, plaintiffs sales of DMEs only amount to less than 1.8% of its total sales, while one-third of its sales are from health and beauty care products. (Tr. at 39:10-23; 96:2-3). Moreover, defendant does not sell the majority of items usually sold in a drug store, such as pet food, automotive products, school supplies, and seasonal items. (Tr. 106:12-18). Plaintiff admits that at most there is only a 20% over lap between the products sold by both stores. (Tr. 130:14-23).
 

 After weighing the
 
 Scott
 
 factors, the Court finds that plaintiff has not proven that it is likely to succeed on the merits of an action pursuant to the Lanham Act. The Court is strongly persuaded by the factual finding that the marks are not confusingly similar and the parties are not direct competitors in the same field.
 
 See Fisons,
 
 30 F.3d at 476 (holding that similarity of the two marks is the most important of the ten factors). Accordingly, the Court will not grant a preliminary injunction based on trademark infringement.
 

 
 *349
 
 2. Dilution
 
 [4]
 

 The Lanham Act was amended on January 16,1996, to provide a remedy for the dilution of famous marks. 15 U.S.C. § 1125, historical & statutory notes. Section 1125(c)(1) provides, in pertinent part:
 

 The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person’s commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection.
 

 15 U.S.C. § 1125(c)(1) (Supp.1996). In analyzing whether a mark is distinctive or famous, the Court must consider:
 

 (A) the degree of inherent or acquired distinctiveness of the mark; (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used; (C) the duration and extent of advertising and publicity of the mark; (D) the geographical extent of the trading area in which the mark is used; (E) the channels of trade for the goods or services with which the mark is used; (F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks’ owner and the person against whom the injunction is sought; (G) the nature and extent of use of the same or similar marks by third parties; and (H) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.
 

 Id.
 
 This section does not require that the plaintiff prove likelihood of customer confusion.
 
 Sunbeam Prods., Inc. v. The West Bend Co.,
 
 39 U.S.P.Q.2d 1545, 1549, 1555, 1996 WL 511639 (S.D.Miss.1996).
 

 The purpose of the law is “ ‘to protect famous trademarks from subsequent uses that blur the distinctiveness of the mark or tarnish or disparage it, even in the absence of a likelihood of confusion.’”
 
 Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. B.E. Windows Corp.,
 
 937 F.Supp. 204, 208 (S.D.N.Y.1996),
 
 reh’g denied,
 
 1996 WL 438174 (S.D.N.Y. Aug. 2, 1996). Through the federal law, “Congress sought to discourage forum-shopping and give authority to federal courts to issue nationwide injunctions based upon trademark dilution.”
 
 Id.
 
 (citation omitted).
 

 To date, there is only one reported case which discusses the new law.
 
 See Dr. Seuss Enterprises, L.P. v.. Penguin Books USA Inc.,
 
 924 F.Supp. 1559 (S.D.Cal.1996). That court, however, did not address the issue of “famous” marks because it was not disputed by the parties.
 
 Id.
 
 at 1573. Earlier this year, however, in an unreported opinion, the Southern District of Mississippi addressed a plaintiffs claim that the defendant violated the new law by selling a stand mixer which infringed on plaintiffs mixer.
 
 Sunbeam,
 
 39 U.S.P.Q.2d at 1546. The court noted that the plaintiff had marketed essentially the same mixer for almost seventy years.
 
 Id.
 
 at 1547. In fact, the court concluded, the design of the plaintiffs mixer remained unchanged since 1979.
 
 Id.
 
 at 1551. In essence, the court found that the plaintiffs mixer “can certainly be identified as a unique and viable product configuration which has evolved into its present shape.”
 
 Id.
 
 None of the other mixers, the court determined, even closely resembled the overall appearance of the plaintiffs mixer, and each mixer had its own individual personality.
 
 Id.
 
 Based on these findings, the court concluded that the plaintiffs mixer qualified as a famous mark.
 
 Id.
 
 at 1555.
 

 Subsequently, the District Court for the Southern District of New York determined that the phrase “The Greatest Show On Earth” was a famous mark of Ringling Brothers circus.
 
 Ringling Bros., supra,
 
 at 210-211. In a brief dissertation, the court found that the slogan had “become a famous mark which the public at large immediately associates with the Ringling Bros.-Barnum
 
 *350
 
 & Bailey Circus.”
 
 Id.
 
 at 211. The court concluded, however, that the defendant was not employing the plaintiffs mark when it used “The Greatest Bar on Earth” to promote its restaurant.
 
 Id.
 
 at 213.
 

 Finally, earlier this month the Eastern District of Pennsylvania addressed the claim of plaintiff Wawa, Inc. that the defendant’s use of the name “Haha 24 Hr. Market” violated the Federal Trademark Dilution Act of 1995.
 
 Wawa, Inc. v. Haaf,
 
 No. 96-4313 (CJC), 1996 WL 460083, at *1-2 (E.D.Pa. Aug. 7, 1996). The court found that “Wawa is an arbitrary or fanciful mark and not descriptive of goods and services its owner markets.”
 
 Id.
 
 at 2. The mark, the court determined, had been used by the plaintiff for almost ninety years, and was extensively advertised.
 
 Id.
 
 Therefore, the court concluded that the Wawa mark was famous.
 
 Id.
 

 Unlike the cases above, this Court finds that plaintiffs mark is not famous and unworthy of protection under the new federal law. The slogan has only been used by plaintiff for nine years. (Tr. at' 6:24-25). Also plaintiff only uses the slogan in association with the store name Genovese. (Tr. 16:15-18; 55:21-56:2). Therefore, in and of itself, the slogan is not inherently distinctive. Defendant is not employing plaintiffs mark by using the words “take good care.” Moreover, as discussed above, the parties are not in direct competition. Hence, the Court finds that plaintiff is unlikely to succeed on the merits of its dilution claims.
 

 3. False Designation of Origin, False Description & Representation, False Advertising
 

 Plaintiffs final cause of action is for violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The federal law provides:
 

 (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which
 

 (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
 

 (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person’s services, or commercial activities,
 

 shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
 

 15 U.S.C. § 1125(a)(1).
 

 As previously discussed at length, the Court finds that the parties are not in direct competition and the marks are not confusingly similar. Accordingly, the Court finds that plaintiff has failed to satisfy its burden that it will likely succeed on the merits of its claim under § 43(a) of the Lanham Act.
 

 B. IRREPARABLE HARM
 

 The Court is further discouraged to grant preliminary relief based on the irreparable harm that such a decision would have on defendant. While the Court recognizes that plaintiff could conceivably suffer some harm to its reputation and good-will if its trademark were infringed, it is far outweighed by the devastating harm to defendant.3 *
 
 [5]
 
 Defendant is a new company in its early formation stage. Defendant has just opened its first two stores under the name take
 
 good
 
 care. If defendant were required to change its name at this stage of its development, it would call into question the stability and integrity of defendant’s store. (Tr. 109:6-111:18).
 

 Moreover, if defendant were forced to preliminarily change its name and then succeed in this lawsuit, it would be economically unsound and, most likely, financially unfeasible
 
 *351
 
 for defendant to return to its original name. (Tr. 177:14-25; 180:23-183:7). Such harm is irreparable, and more devastating than the possibility of harm to plaintiffs reputation and good-will. In essence, plaintiff would improperly benefit from a permanent injunction because defendant could not return to its original name.
 
 See Sovereign Order of St. John of Jerusalem-Knights of Malta by Coleman v. Messineo,
 
 572 F.Supp. 983, 990 (E.D.Pa.1983);
 
 Kass v. Arden-Mayfair, Inc.,
 
 431 F.Supp. 1037, 1041 — 42 (C.D.Cal.1977). Hence, plaintiffs motion for preliminary injunctive relief is DENIED.
 

 CONCLUSION
 

 The Court concludes that plaintiff has failed to meet its burden of showing a likelihood of success on the merits, any harm to plaintiff is outweighed by the harm to defendant, and there is no public interest in granting the relief. Therefore, for the foregoing reasons, plaintiffs motion for a preliminary injunction is DENIED.
 

 An appropriate Order accompanies this Opinion.
 

 ORDER
 

 This matter having come before the Court on the application of plaintiff Genovese Drug Stores, Inc. for a preliminary injunction against defendant TGC Stores, Inc., seeking to enjoin defendant from using the name take
 
 good
 
 care for its new health care stores, and the Court having conducted an evidentiary hearing on August 12-13,1996, and having considered the submissions of the parties, and for the reasons appearing more particularly in the Letter Opinion of this Court in the above-captioned matter, and good cause having been shown,
 

 IT IS on this 5th day of September, 1996, hereby
 

 ORDERED that plaintiffs application is DENIED.
 

 [1]
 

 . Defendant opened a complete store in Springfield, New Jersey. The Springfield store is representative of the types of stores defendant plans on expanding. Defendant’s other store is located in Edison, New Jersey. Defendant leased the Ackerman Medical Supply Store, a durable medical equipment dealer, as a means of entering the home health care market. The Edison store is considerably smaller and ascetically different than the Springfield store. Because the Edison store does not represent the type of stores defendant wants to operate, defendant has declined to renew the lease at the end of this year.
 
 (See
 
 Tr. at 98:21-99:14).
 

 [2]
 

 . Plaintiff also asserts state and common law claims for trademark infringement.
 
 See
 
 Complaint, Counts 4-5. Because the standards governing these claims are interchangeable with the federal claim, the Court will also dispose of these Counts through the present analysis.
 
 See Versa Prods. Co., Inc. v. Bifold Co. (Mfg.), Ltd.,
 
 50 F.3d 189, 216 n. 19 (3d Cir.),
 
 cert. denied,
 
 - U.S. -, 116 S.Ct. 54, 133 L.Ed.2d 19 (1995);
 
 Wilson v. Mr. Tee’s,
 
 855 F.Supp. 679, 684-85 (D.NJ. 1994);
 
 Specialty Measurements, Inc. v. Measurement Sys., Inc.,
 
 763 F.Supp. 91, 93 n. 1 (D.NJ. 1991);
 
 Warner-Lambert Co. v. McCrory’s Corp.,
 
 12 U.S.P.Q.2d 1884, 1888-89, 718 F.Supp. 389 (D.N.J.1989) (citing
 
 American Greetings Corp. v. Dan-Dee Imports, Inc.,
 
 807 F.2d 1136, 1141 (3d Cir.1986));
 
 National Football League Prop., Inc. v. N.J. Giants, Inc.,
 
 637 F.Supp. 507, 519-20 (D.N.J.1986) (quoting
 
 SK & F., Co.
 
 v.
 
 Premo Pharm. Lab., Inc.,
 
 625 F.2d 1055, 1065 (3d Cir. 1980)).
 

 [3]
 

 . Plaintiff posits that because the parties are competitors, these factors need not be considered.
 
 See Interpace,
 
 721 F.2d at 462. Rather, plaintiff asserts that the Court must focus exclusively on the marks themselves.
 
 Id.
 
 The Court and not plaintiff, however, must make the determination as to whether the parties are actually competitors.
 

 [4]
 

 . Plaintiff also asserts a cause of action for common law dilution. To succeed under both the federal and common law, plaintiff must establish that its mark is "famous.” Therefore, the Court will conduct a single analysis which disposes of both claims.
 

 [5]
 

 . The Court notes that to date plaintiff has no evidence of confusion between the stores, nor has plaintiff received any complaints about the quality or service of defendant's store. (Tr. at 28:6-12; 93:14-21; 94:1-8).